# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **G.W., I.W., A.W., and V.W.**

**No. 22-0089** (Gilmer County 21-JA-2, 21-JA-3, 21-JA-4, and 21-JA-5)

## MEMORANDUM DECISION

Petitioner Mother K.M., by counsel Tyler K. Cottrill, appeals the Circuit Court of Gilmer County's December 22, 2021, order terminating her legal, parental, and custodial rights to G.W., I.W., A.W., and V.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Julia R. Callaghan, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues the circuit court erred in denying her an improvement period and in terminating her parental rights rather than imposing a less-restrictive dispositional alternative.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2016, the DHHR filed a child abuse and neglect petition alleging that the father physically abused the children and petitioner failed to protect them from that abuse. The parents

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Although the circuit court terminated petitioner's "legal, parental, and custodial rights" below, petitioner challenges the termination of her "parental rights" on appeal. The Court assumes petitioner is challenging the termination of all rights that were terminated by the circuit court.

stipulated to the allegations and were adjudicated as abusing parents. The parents participated in improvement periods, received counseling and adult life skills and parenting classes, and ultimately completed their improvement periods. The children were returned to the parents' care in February of 2017.

In March of 2021, the DHHR filed a child abuse and neglect petition alleging that the father physically abused the children and petitioner took no action to protect them. The DHHR observed injuries on then-eleven-year-old G.W.'s legs, who reported that the father caused the injuries. G.W. stated the father responded to a noise in his room and found he and then-five-year-old A.W. awake. The father, angry that the children were not asleep, "stomped their legs in their bed with his work boots on" causing bruises and abrasions on their legs. G.W. reported another instance when the father "threw [him] up against the wall." G.W. expressed fear of disclosing more incidents because he was afraid he would be hurt or grounded for the disclosures. He also expressed fear of returning home.

The DHHR arranged forensic interviews for G.W., then-eight-year-old I.W., and A.W. All three children disclosed that their family advised them to talk about "the good things" and they were "not to say bad words or talk about the scary stuff." A.W. described G.W. being struck with a belt as discipline and the father "punch[ing]" petitioner. I.W. stated that petitioner "told her not [to] tell stuff that goes on in the house," including "if [petitioner] or dad slaps or kicks us or makes us bleed." During the interview, I.W. also pointed to "fading bruises" on her body, which she stated were caused by the father whipping her with a belt. Finally, G.W. stated that the father "smacks us in the mouth" and "punches us in the face and chest." The DHHR further alleged that G.W. required medication for a seizure disorder that was not administered properly by the parents.

The parents appeared before the circuit court in April of 2021 and indicated their desire to waive their adjudicatory hearing and stipulate to certain allegations in the petition. Petitioner stipulated to paragraph 3p of the petition, which alleged that the parents were previously adjudicated "for physical abuse [by the father] and failure to protect [by petitioner] of the three older children" as well as other procedural aspects of the prior abuse and neglect proceedings. The circuit court accepted the parents' admissions and adjudicated them as abusing parents. Petitioner moved for a post-adjudicatory improvement period, to which the DHHR and the guardian objected. The circuit court held petitioner's motion in abeyance. In August of 2021, the DHHR filed a family case plan, recommending the termination of petitioner's parental rights to the children.

In September of 2021, the circuit court held a dispositional hearing. The court heard testimony from Barbara Nelson, a licensed psychologist who performed a parental fitness evaluation of petitioner. Ms. Nelson's report was admitted into evidence, and she testified that there was a "complete lack of responsibility on the part of both parents." Ms. Nelson noted that in the prior abuse and neglect proceedings petitioner made admissions, was adjudicated, and received services. However, Ms. Nelson testified that, because the allegations in the instant case were "the same or similar" to the prior proceedings, there was no evidence that petitioner benefited from prior services and no evidence that she took action to correct the abuse and neglect occurring in her home. Ms. Nelson observed that petitioner exhibited evidence of

intellectual and adaptive skills deficits, which she opined made petitioner vulnerable to suggestion and the influence of others, limited her ability to make effective decisions, made her highly impulsive, and limited her ability to benefit from instruction. Ms. Nelson further testified that in addition to these deficits, petitioner had "significant dysfunctional personality traits and characteristics," which made petitioner highly dependent and socially avoidant. Further, petitioner "had physical and emotional abuse modeled for her as a child." Ms. Nelson believed that, due to petitioner's inability to live independently and her significant dependance on the father, she appeared to be quite willing to lie to protect him, to influence the children to lie to protect him, and to remain with him in a situation that was highly detrimental to the children. Ms. Nelson testified that even if petitioner separated from the father, "she [was] likely to seek out the same type of relationship she had with the [father] which would endanger the children." Finally, Ms. Nelson opined that it was in the best interest of the children not to have contact with the parents.

The report also contained statements from petitioner denying the allegations in the 2016 case, as well as the instant case, claiming that the allegations were "made up" by the children, placing particular blame on G.W. and asserting that "something is wrong with him." Petitioner also asserted to Ms. Nelson that she did not remember making any admissions. Petitioner stated that the father admitted to abusing the children, but she denied that he, in fact, abused them. Petitioner clarified that the father's counsel "told him to" make admissions, despite the father's innocence.

The DHHR then presented testimony from two therapists and Ms. Jena Cory, a licensed psychologist who performed psychological evaluations of all four children. Ms. Cory testified that G.W., I.W., and A.W. described physical abuse in the home. The children's therapist testified that the children also reported physical abuse to her. A second therapist, who provided therapy to the children on an interim basis, testified that the children made similar disclosures to her. Both therapists that worked with the children recommended that the children have no visitation with the parents.

The DHHR presented testimony from petitioner's case worker, who recommended termination of petitioner's parental rights. She explained that the recommendation was based on the similarity in allegations between the prior and instant cases. The worker testified that, because the conditions of abuse and neglect persisted after the provision of services, it was clear that the parents had not benefited from the receipt of services in the prior case. The worker further stated that there were not additional services the DHHR could offer the parents because they failed to take any responsibility for the abuse and neglect of the children.

The father called Ms. Kathy Wise, a privately-retained therapist who provided therapy to both parents. She admitted she was not a licensed psychologist, and she testified as a lay witness because the circuit court found that she did not qualify as an expert witness. Ms. Wise opined that the DHHR failed to provide the parents with adequate rehabilitative services in the 2016 proceedings. However, Ms. Wise acknowledged that this opinion was rendered based upon interviews of the parents and not any of the individuals who provided the services. Ms. Wise did not identify any particular problems with the services rendered. The circuit court noted that the parents completed parenting and adult life skills classes, anger management counseling, and

3

other programs, which were satisfactory to the judge presiding over the 2016 case. Ms. Wise further opined that the DHHR's current provision of services was not satisfactory, but, again, did not state with any particularity the deficiency in the services. The court inquired of Ms. Wise and found her to be "evasive [and] non-responsive" to the court's questioning.

Ms. Wise further testified that the parents "did not want to admit to the allegations in both the 2016 and 2021 abuse and neglect cases," but they did so upon the prompting of their counsel. The court found that this testimony was contrary to the testimony of the parents "who indicated that they understood the allegations in both the 2016 and 2021 petitions, that they understood their right to a hearing and representation by counsel, and they freely, knowingly, voluntarily, and intelligently. . . admitted the allegations in the petitions." Ms. Wise also testified that she disagreed with Ms. Nelson's prognosis because Ms. Nelson failed to consider the parents' progress and improvements. Ultimately, the court found that Ms. Wise was "less than credible and that the weight to be given [to] her testimony should be minimal at best."

Finally, petitioner denied that she physically abused the children at any point. She testified that she was currently participating in parenting and adult life skills, domestic violence counseling, and anger management in therapy. Further, she stated that she would "choose her children over [the father] if that was necessary." Petitioner testified that she informed Ms. Nelson that she did not remember admitting abusing the children in 2016, but she remembered the father admitted to abusing the children at the behest of his counsel and not of his own volition. Notably, when called to testify, the father stated his admissions to the petition were voluntary. Petitioner asserted that the children "made up the allegations in the 2016 case, and that the [DHHR] worker had a vendetta against her." The court noted that the records from the 2016 case indicated that petitioner "admitted to seeing [the father] strike [G.W.], and that [petitioner] did not respond[.] [She also] admitted to slapping [I.W.] in the face." Petitioner then clarified that she admitted to the allegations in 2016 because she was guilty of those allegations and further understood in the current case that she could have had an adjudicatory hearing rather than make admissions in the instant proceeding. Upon hearing petitioner's testimony, the court deemed her a less than credible witness.

The court considered the evidence and found that although petitioner participated in services, her contradictory statements regarding her admissions indicate that she had not taken responsibility for her actions. The court found that petitioner was previously found to have physically abused the children in 2016 and that the services provided to her were not effective, as evidenced by the continuation of abuse. The court found that the children had reported several incidents of physical abuse, as well as coaching and coercion, by the parents "to keep those incidents concealed." The circuit court reasoned that petitioner did not demonstrate that she was likely to fully participate in an improvement period. It further found that "there is no evidence that additional services would be effective, in part due to [petitioner's] lack of acceptance of responsibility." The court concluded there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was in the children's best interest. Accordingly, the circuit court

4

terminated petitioner's legal, parental, and custodial rights by its December 22, 2021, order. Petitioner now appeals that order.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period. According to petitioner, she participated in the services recommended by the DHHR and sought additional therapy "to improve her self-esteem in order to separate and divorce the primary abuse[r]," the father. Petitioner asserts that her prior participation in an improvement period should not "be . . . strictly held against her" because, in the instant proceeding, she admitted only to paragraph 3p of the petition. Petitioner argues that this admission is "essentially only an acknowledgment that a previous case existed" and was not an admission to new acts of abuse and neglect. Petitioner further states that she "is adamant that she has never personally witnessed the [f]ather abuse the children," but nevertheless, identified him as the abuser of the children based on his admissions to allegations of abuse. Thus, petitioner argues, the circuit court erred in finding that she failed to acknowledge the conditions of abuse and neglect because she correctly identified the father as the abuser of the children, and she indicated that she was willing to leave the father to correct the conditions of neglect and abuse.

First, it must be noted that petitioner's appeal falls woefully short of complying with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, as she has failed to provide a single citation to the record. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires, in relevant part, that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error

---

[3]The father's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption by their current foster parents.

5

were presented to the lower tribunal." Critically, this Rule also provides that "[t]he Court may disregard errors that are not adequately supported by specific references to the record on appeal." *Id*. As we have mentioned, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted).

Nevertheless, upon our review of the record, we find no error with the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period. In order to be granted a post-adjudicatory improvement period under West Virginia Code § 49-4-610(2)(B), the parent must first "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period." "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely). Critically,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Here, we are not persuaded by petitioner's argument that she acknowledged the conditions of abuse and neglect by identifying the father as the abuser of the children. As noted above, petitioner failed to cite to a place in the record where she, in fact, identified the father as the children's abuser. Rather, the record contains petitioner's defense of the father, asserting that he only admitted to abusing the children because he was directed to do so by his counsel and further asserting that G.W. fabricated the abuse. Moreover, on appeal, petitioner ignores the fact that she, too, admitted abusing the children in 2016, only to deny the same during the instant proceedings. Petitioner admitted in 2016 that she witnessed the father strike G.W. and admitted that she struck I.W. However, during her testimony at the dispositional hearing, petitioner flatly denied that she physically abused the children. Accordingly, we find no error with the circuit court's conclusion that petitioner failed to take responsibility for the conditions of abuse and neglect or its decision to deny petitioner's motion for an improvement period based on her failure to acknowledge those conditions.

Further, we find no error in the circuit court's termination of petitioner's parental rights to the children. Petitioner's primary argument against the court's decision is, again, that she identified the father as the abuser of the children. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code §

49-4-604(d) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the "abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." The evidence detailed above fully supports the circuit court's finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future based upon petitioner's failure to acknowledge the same. Accordingly, we find no error in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 22, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn